**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 36 MAP 2017 |
| | : | |
| | : | Appeal from the Order of the Superior |
| Appellant | : | Court at No. 211 MDA 2016 dated |
| | : | 11/29/16, reargument denied 2/2/17, |
| | : | affirming the judgment of sentence of |
| | : | the York County Court of Common |
| v. | : | Pleas, Criminal Division, at CP-67-CR- |
| | : | 0001126-2015 dated 1/4/16 |
| JONATHAN NELSON SMITH, | : | |
| | : | |
| Appellee | : | ARGUED: March 6, 2018 |

**OPINION**

**CHIEF JUSTICE SAYLOR**                         **DECIDED: June 1, 2018**

We allowed the Commonwealth's appeal in this matter to address whether the deadly-weapon-used sentencing enhancement applies to a defendant who is convicted of aggravated assault based on a motor vehicle accident, where the defendant acted recklessly but did not specifically intend to injure the victim.

On the evening in question, Appellee drove to several bars and consumed alcohol. At the last of these establishments, he spoke with three individuals and expressed an interest in obtaining drugs. The four men left the bar and got into Appellee's car, with Appellee driving. While en route to purchase drugs, Appellee approached an area where pedestrians were intermittently crossing the street in a lighted crosswalk equipped with flashing warning lights. Appellee did not slow down as

his vehicle approached. He struck a pedestrian in the crosswalk, causing severe injuries, and then fled the scene without getting out of his car to check on the victim. At the time of the incident, Appellee was intoxicated and distracted by his passengers. There is no suggestion Appellee meant to strike the victim or even that he saw him until immediately before the collision. Thus, it is undisputed that his conduct in injuring the victim was criminally reckless but not knowing or intentional.[1]

Appellee was charged with numerous offenses, including aggravated assault, see 18 Pa.C.S. §2702(a)(1), and driving under the influence. See 75 Pa.C.S. §3802(a)(1). He entered open guilty pleas to those two charges, and the Commonwealth nolle prossed the others.[2]

Prior to sentencing, the Commonwealth argued that, under Commonwealth v. Buterbaugh, 91 A.3d 1247 (Pa. Super. 2014) (en banc) (holding that an automobile can constitute a deadly weapon for purposes of the deadly-weapon-used sentencing

---

[1] Although Appellee's conduct in leaving the scene of the accident may have been intentional, that is not material to the issue before this Court.

[2] This appeal only involves the sentence for the aggravated assault charge. That offense is defined, in relevant part, as follows:

> A person is guilty of aggravated assault if he: . . . causes [serious bodily] injury [to another] intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S. §2702(a)(1). As noted, Appellee's conduct is admitted by the parties to have been reckless rather than knowing or intentional. Under the Crimes Code, a person "acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct." Id. §302(b)(3). "The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." Id.

enhancement), the court should apply the deadly-weapon-used enhancement (the "DWUE") because it is implicated whenever a vehicle is involved in the underlying offense. Appellee opposed the Commonwealth's position, contending that *Buterbaugh* had held that application of the DWUE is circumstance-dependent. More particularly, Appellee maintained that under *Buterbaugh*, the DWUE only applies when the driver specifically intends to use the vehicle to injure or threaten the victim, which is what had occurred in that matter.

The common pleas court agreed with Appellee's reading of *Buterbaugh* and concluded that the DWUE was not presently implicated because Appellee only intended to use his vehicle as a means of transportation – and not as a weapon – at the time of the incident. *See* N.T., Jan. 4, 2016, at 17 (sentencing hearing). Accordingly, the court sentenced Appellee within the standard range for aggravated assault without the DWUE, albeit at the "top end" of that range. *Id.* at 18.[3]

The Superior Court affirmed on the same grounds, namely, that there was no indication Appellee sought to use his car as a deadly weapon. *See Commonwealth v. Smith*, 151 A.3d 1100, 1107 (Pa. Super. 2016). We granted further review to address whether the common pleas court should have applied the DWUE under the facts of this case. *See Commonwealth v. Smith*, ___ Pa. ___, 169 A.3d 1067 (2017) (*per curiam*).

The DWUE is set forth in Pennsylvania's Sentencing Guidelines, which are promulgated by the Pennsylvania Commission on Sentencing (the "Commission"), a legislative agency created by the General Assembly. The Guidelines were "designed to bring greater rationality and consistency to sentences and to eliminate unwarranted

---

[3] The court sentenced Appellee to six-and-one-half to fifteen years' incarceration for aggravated assault. It imposed a concurrent sentence of 30 days to six months' imprisonment on the DUI charge. Appellee was also ordered to pay costs, a fine, and restitution in an amount exceeding $700,000.

disparity in sentencing." *Commonwealth v. Walls*, 592 Pa. 557, 565 n.3, 926 A.2d 957, 961 n.3 (2007) (citations omitted). As such, they serve to inform the sentencing decision rather than restrict the court's discretion. *See id.* at 565, 926 A.2d at 962 (citation omitted). Still, if the DWUE applies, the sentencing court is required to consider the DWE/Used matrix. *See* 204 Pa. Code §§303.9(b), 303.10(a)(2), (4).

Because the Sentencing Guidelines are quasi-legislative in nature, *see* 42 Pa.C.S. §2155; *Commonwealth v. Sessoms*, 516 Pa. 365, 375-76, 532 A.2d 775, 780 (1987); *Commonwealth v. Hackenberger*, 575 Pa. 197, 201 & n.9, 836 A.2d 2, 4 & n.9 (2003), delineating the scope of the DWUE entails resolving an issue of law over which we exercise *de novo* review. The DWUE states:

> When the court determines that the offender used a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Used Matrix . . .. An offender has used a deadly weapon if any of the following were employed by the offender in a way that threatened or injured another individual: (i) Any firearm, . . . , or (ii) Any dangerous weapon (as defined in 18 Pa.C.S. §913), or (iii) Any device, implement, or instrumentality capable of producing death or serious bodily injury.

204 Pa. Code §303.10(a)(2).[4]

---

[4] There is also a deadly-weapon-possessed enhancement (the "DWPE") which, unlike the DWUE, includes an express intent qualifier:

> When the court determines that the offender possessed a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Possessed Matrix . . .. An offender has possessed a deadly weapon if any of the following were on the offender's person or within his immediate physical control: (i) Any firearm, . . . , or (ii) Any dangerous weapon (as defined in 18 Pa.C.S. §913), or (iii) Any device, implement, or instrumentality designed as a weapon or capable of producing death or serious bodily injury *where the court determines that the offender intended to use the weapon to threaten or injure another individual.*

204 Pa. Code §303.10(a)(1) (emphasis added).

An automobile is clearly not a firearm, nor is it a dangerous weapon as defined in Section 913. *See* 18 Pa.C.S. §913(f) (defining a "dangerous weapon" as a bomb, explosive or incendiary device, grenade, sandbag, blackjack, metal knuckles, switchblade, or any similar item designed to inflict serious bodily injury which "serves no common lawful purpose"). An automobile is, however, an "instrumentality capable of producing death or serious bodily injury." 204 Pa. Code §303.10(a)(2)(iii).

The Commonwealth argues that the DWUE, by its plain text, applies whenever the use of a vehicle causes serious injury or death regardless of the driver's specific intent. It proffers that the DWUE only requires general intent, which is derived from the *mens rea* of the underlying crime.[5] The Commonwealth posits that the omission of any textual reference to the defendant's *mens rea* in subparagraph (iii) of the DWUE is noteworthy because in the counterpart aspect of the DWPE the defendant's specific intent is expressly made a prerequisite to an enhanced sentence. *See supra* note 4; *see also In re Vencil*, 638 Pa. 1, 16, 152 A.3d 235, 244 (2017) (indicating that, where language is included in one statutory section, its omission from a similar section is

---

[5] Briefly speaking, general-intent offenses are those in which the actor intends only to take the proscribed action, whereas specific-intent offenses are those in which the actor intends to cause the harm to which the criminal statute is addressed. *See* 22 C.J.S. *Criminal Law: Substantive Principles* §36; *see also Carter v. United States*, 530 U.S. 255, 268, 120 S. Ct. 2159, 2168 (2000) (providing an illustration). The United States Supreme Court has noted that, due to the ambiguities inherent to this distinction – particularly insofar as the term "general intent" is concerned – there has been a movement away from the dichotomy and toward a hierarchy of culpable mental states. *See United States v. Bailey*, 444 U.S. 394, 403-04, 100 S. Ct. 624, 631 (1980); *cf. Liparota v. United States*, 471 U.S. 419, 433 n.16, 105 S. Ct. 2084, 2092 n.16 (1985) (indicating jury instructions referring to specific mental states are preferable to those which use "difficult legal concepts like 'specific intent' and 'general intent'"). *See generally People v. Hood*, 462 P.2d 370, 377-78 (Cal. 1969) (providing an overview of the evolution of the distinction between general and specific intent crimes, and noting the problematic nature of that distinction).

significant); *Commonwealth v. Fields*, 630 Pa. 625, 634, 107 A.3d 738, 743 (2014). Accordingly, the Commonwealth states that the malice inherent to aggravated assault, *see Commonwealth v. Packer*, ___ Pa. ___, ___, 168 A.3d 161, 168 (2017), satisfies the DWUE's general-intent prerequisite. The Commonwealth continues that under the Superior Court's interpretation, the DWUE would never apply to a general-intent crime. *See* Brief for Commonwealth at 34.[6]

Appellee disputes these points. He maintains that, although the DWUE does not include the word "intent," that concept is implicit in the predicate that the defendant must have "employed" a device to threaten or injure. Appellee advances that the actor's use in this regard cannot logically be separated from his underlying intention. Along these lines, he stresses that "everyday items" such as automobiles are rarely used as weapons, and hence, "it is the manner in which the instrumentality is employed . . . that matters." Brief for Appellee at 13. As for the different wording of subparagraph (iii) of the DWPE, Appellee indicates that intent-type language is needed in that context to screen out scenarios where a non-weapon item is merely possessed but it does not, and is not intended to, contribute to the offense or to the harm caused. Appellee additionally emphasizes that the focus of the DWUE is on the use of a weapon in carrying out a crime, whereas the scienter required for the underlying offense is not controlling as to that consideration. To the extent there is uncertainty, Appellee invokes the rule of lenity to support his position.

---

[6] The Commonwealth also portrays the Superior Court's analysis in this case as inconsistent with that of the *en banc* panel in *Buterbaugh*. Whether or not that characterization is accurate, any purported failure on the part of the Superior Court in the present case to follow its own precedent is immaterial to our *de novo* resolution of the legal issue presented. *See McGrath v. Bureau of Prof'l & Occupational Affairs*, ___ Pa. ___, ___ n.7, 173 A.3d 656, 661 n.7 (2017).

"The object of any judicial exercise in statutory interpretation is to ascertain and effectuate legislative intent." *Commonwealth v. Cullen-Doyle*, ___ Pa. ___, ___, 164 A.3d 1239, 1242 (2017) (citing 1 Pa.C.S. §1921(a)). Due to the Guidelines' legislative character, we interpret their substantive provisions as we would those of a statutory enactment. *See Hackenberger*, 575 Pa. at 201 n.9, 836 A.2d at 4 n.9. As such, our goal is to ascertain and effectuate legislative intent. *See id.* at 201, 836 A.2d at 4 (citing 1 Pa.C.S. §1921(a)).[7] Statutory words and phrases are "construed according to the rules of grammar and according to their common and approved usage[.]" 1 Pa.C.S. §1903(a). Further, we do not read words in isolation, but with reference to the context in which they appear. *See Rendell v. Pa. State Ethics Comm'n*, 603 Pa. 292, 303-04, 983 A.2d 708, 715 (2009) (quoting *O'Rourke v. Commonwealth*, 566 Pa. 161, 173, 778 A.2d 1194, 1201 (2001)).

Our present inquiry centers on what it means, in the context of the DWUE as a whole, for a device, implement, or instrumentality to be "employed by the offender in a way that threatened or injured another individual[.]" 204 Pa. Code §303.10(a)(2). As noted, the Commonwealth contends that, to give effect to the DWUE in its full context, it should be read together with the DWPE, which, unlike the DWUE, contains an express reference to the defendant's intent. *See supra* note 4. In this respect, the Commonwealth highlights that, where language appears in one section but is omitted from a substantively related provision, a different legislative intent can often be assumed. *See Vencil*, 638 Pa. at 16, 152 A.3d at 244 (quoting *Bd. of Revision of Taxes*

---

[7] Although the Guidelines are initially adopted by the Commission, this Court refers to the underlying intent as "legislative intent" for convenience and because the General Assembly retains authority to disapprove their terms subject to gubernatorial review. *See* 42 Pa.C.S. §2155; *Hackenberger*, 575 Pa. at 201 n.9, 836 A.2d at 4 n.9.

*v. City of Phila.*, 607 Pa. 104, 125, 4 A.3d 610, 622 (2010); *Fletcher v. Pa. Prop. & Cas. Ins. Guar. Ass'n*, 603 Pa. 452, 462, 985 A.2d 678, 684 (2009)).

The force of such principle is diminished where, as here, an alternate explanation for the textual difference is evident. By its terms, the DWPE applies when a weapon or instrumentality capable of producing death or serious injury was on the offender's person or within his immediate control during commission of the offense. *See generally* BLACK'S LAW DICTIONARY 919 (10th ed. 2014) (defining "instrumentality" as any "thing used to achieve an end or purpose"). Notably, a wide range of otherwise benign objects are capable of producing serious injury or death if misused. *See, e.g., Commonwealth v. Pepperman*, 353 Pa. 373, 45 A.2d 35 (1946) (bedroom slipper); *Commonwealth v. Rhoades*, 8 A.3d 912 (Pa. Super. 2010) (glass bottle); *Commonwealth v. Roman*, 714 A.2d 440 (Pa. Super. 1998) (egg); *Grass v. People*, 471 P.2d 602, 605 (Colo. 1970) (shoe); *Cummings v. State*, 384 N.E.2d 605 (Ind. 1979) (stapler); *Sharpe v. State*, 340 So. 2d 885 (Ala. Crim. App. 1976) (chair). Thus, absent the "intent" qualifier, the DWPE could become unduly expansive as it pertains to non-weapon items, because it could be applied whenever the defendant possesses anything, however innocuous, that could in other circumstances be used to cause injury or death. Predicating an enhanced sentence on the offender's intent to use a non-weapon object in a harmful way avoids such overbreadth.

By contrast, the DWUE is inherently focused on the way an object was used during the offense; as a consequence, any similar concern that it might be applied in an overly-broad manner is lessened. Thus, the absence of an express reference to the actor's intent in the DWUE does not necessarily reflect a difference in legislative intent.

Nor can the Commonwealth prevail on its argument that the scienter associated with the underlying offense satisfies the DWUE's mandate. The *mens rea* threshold for

guilt as to the offense in question is contained in its definition or imported from the Crimes Code's default provision. *See* 18 Pa.C.S. §302(c). It must be proved to a factfinder at trial or established by a guilty plea. By contrast, the DWUE is implicated when "the [sentencing] court determines" that the enhancement's statutory prerequisites are satisfied. 204 Pa. Code §303.10(a)(2). Those prerequisites are enumerated in the DWUE separate and apart from the definition of the underlying offense. As such, they must be independently analyzed by the sentencing court on their own terms.[8] In resolving the legal issue before us, therefore, our present inquiry is directed to whether criminally reckless use of an automobile satisfies the statutory prerequisites of the DWUE as they are specifically set forth in its text.

In reading the DWUE as it applies to a motor vehicle per subparagraph (iii), we ultimately conclude that criminally reckless use of such a vehicle for its ordinary purpose of transportation does not trigger an enhanced sentence notwithstanding that such recklessness results in serious bodily injury. We reach this conclusion based on the operative language of the DWUE when read in its immediate context.

First, all categories of deadly weapon in the DWUE are subject to the limitation that the defendant can only be deemed to have "used a deadly weapon if any of the following were employed by the offender in a way that threatened or injured another individual[.]" 204 Pa. Code §303.10(a)(2). Notably, "injured" appears directly alongside "threatened." This juxtaposition suggests that, like the act of threatening, the injuring contemplated by the DWUE must be accomplished according to purpose or design.

---

[8] The *en banc* panel in *Buterbaugh* observed that, because the sentencing court always retains discretion to sentence outside the guideline range, use of the DWUE based on findings by the sentencing court is not constitutionally problematic under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), or *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151 (2013). *See Buterbaugh*, 91 A.3d at 1270 n.10.

Although such textual proximity may not always reflect a similarity of meaning, our reading is supported by the predicate verb, "employed" – a term we find to have particular salience. This Court considered the meaning of "employ" in *Appeal of School District of Hampton Township*, 362 Pa. 395, 67 A.2d 376 (1949). In that matter, the Court reviewed several dictionary definitions and ultimately explained:

> It is clear from these definitions that to 'employ' property means not merely to use it in a physical or mechanical sense but also *to use it as an instrument or means of effecting some object* or maintaining or aiding an enterprise or activity . . ..

*Id.* at 398, 67 A.2d at 377 (emphasis added). Thus, we conclude that the statutory language referring to an item being "employed" to "threaten or injure" suggests that the use made of the item is, as the Superior Court held, "informed by the ends that person hopes to attain." *Smith*, 151 A.3d at 1107.

Second, the preliminary language discussed above is immediately followed by a list of three categories: firearms, deadly weapons, and devices, implements, or instrumentalities capable of producing death or serious injury. Firearms are, of course, a type of weapon. *See, e.g.,* 18 Pa.C.S. §913(f). The second category likewise pertains solely to weapons. Particularly as the title of the provision is the "Deadly Weapon Enhancement," we view the third category as encompassing any other item capable of inflicting serious injury or death when it is used *as a weapon* to "threaten[] or injure[] another individual." 204 Pa. Code §303.10(a)(2). *See generally* 1 Pa.C.S. §1924 (providing that, while titles and headings of statutory provisions are not controlling, they may be considered as an aid to construction).

Plainly, motor vehicles are ordinarily used for transportation. However, they can become weapons when repurposed to threaten or injure others. Thus, in *Buterbaugh* the defendant was involved in an altercation which started in a tavern and continued

outside. In an angry state of mind, he got into his pickup truck, revved the engine, and accelerated toward the victim, striking and killing him. The court explained that his

> vehicle was originally used for its intended purpose: to transport two friends and himself to a bar. However, the character of the vehicle changed to a deadly weapon the instant Appellant backed his vehicle out of the bar's parking lot, accelerated forward at its maximum rate of acceleration, and struck the victim with sufficient force to cause death.

*Buterbaugh*, 91 A.3d at 1269. In short, the defendant consciously repurposed his vehicle as a weapon and used it as such. In this respect, the defendant's action in injuring his victim, being intentional, was qualitatively different from, and more culpable than, the Appellee's reckless conduct. *Cf. People v. Stewart*, 55 P.3d 107, 117-18 (Colo. 2002) (differentiating between (a) recklessly driving "a vehicle as a vehicle" resulting in serious bodily injury, and (b) using a car as a deadly weapon such as in a "road rage" incident, and concluding that the legislature could rationally prescribe a harsher punishment for the latter type of conduct).

The Commonwealth stresses that Buterbaugh was not found to have had a specific intent to kill, as he was convicted of third-degree murder rather than first-degree murder. Regardless, upon seeing the victim, Buterbaugh intentionally accelerated his vehicle toward him. *See Buterbaugh*, 91 A.3d at 1252. Thus, Buterbaugh's lack of a specific intent to kill is not directly relevant to the issue in this appeal. *Cf. Commonwealth v. Chumley*, 482 Pa. 626, 635, 394 A.2d 497, 501-02 (1978) (approving a description of legal malice, for third-degree murder purposes, which incorporated a "specific intent to inflict great bodily injury"). Further, the circumstances of *Buterbaugh* illustrate that, contrary to the Commonwealth's assertion, our present interpretation allows for the DWUE to be applied in the context of a general-intent crime.

The order of the Superior Court is affirmed.

Justices Baer, Todd, Donohue, Dougherty, Wecht and Mundy join the opinion.