**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| BERT HUDSON, | : | No. 17 WAP 2018 |
| Appellant | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court entered on |
| | : | 5/29/18 at No. 444 MD 2017 |
| v. | : | |
| | : | |
| PENNSYLVANIA BOARD OF | : | |
| PROBATION AND PAROLE, | : | |
| | : | |
| Appellee | : | SUBMITTED: March 21, 2019 |

*OPINION*

**CHIEF JUSTICE SAYLOR**                    **DECIDED:  MARCH 26, 2019**

This is a direct appeal from a Commonwealth Court order dismissing Appellant's petition for review, in which he argued that he is entitled to be considered for parole after having received a sentence of life imprisonment for second-degree murder.

In 1978, Appellant burglarized a home and shot two individuals with a handgun, killing one of them.  He was convicted of second-degree murder, *see* 18 Pa.C.S. §2502(b), and related offenses.  *See Commonwealth v. Hudson*, 489 Pa. 620, 636, 414 A.2d 1381, 1389 (1980).  The court imposed a sentence of life imprisonment on the murder conviction, *see* 18 Pa.C.S. §1102(b) (requiring a "term of life imprisonment" for second-degree murder), and a separate, consecutive sentence of fifteen-to-thirty years on the other convictions, to be served first.  Appellant completed this latter sentence in 2009, and is now serving his life sentence for second-degree murder.

In 2017, Appellant applied for parole. The Pennsylvania Board of Probation and Parole (the "Board") denied his application on the basis that his life sentence had no minimum date. After exhausting administrative remedies, Appellant filed a petition for review in the Commonwealth Court's original jurisdiction, contending that because the common pleas court had failed to specify a minimum sentence, he should be deemed to have an implied minimum of one day of confinement. Appellant thus asked the court to direct the Board to review him for parole.

In advancing this position, Appellant relied on *Commonwealth v. Ulbrick*, 462 Pa. 257, 341 A.2d 68 (1975) (*per curiam*), which held that an inmate had a presumed minimum sentence of one day of confinement where the sentencing court imposed a "flat sentence" of twenty years but failed to include a minimum sentence as required by law. *Id.* at 259, 341 Pa. at 69. Separately, Appellant acknowledged that the Commonwealth Court had previously determined a life sentence for second-degree murder precludes any possibility of parole. *See Castle v. PBPP*, 123 Pa. Cmwlth. 570, 577, 554 A.2d 625, 629 (1989). He asserted, however, that *Castle* was wrongly decided and should be overruled.

The Board filed a preliminary objection in the nature of a demurrer, indicating that the Probation and Parole Code does not authorize it to grant parole to an inmate who is serving a life sentence. *See* 61 Pa.C.S. §6137(a)(1). In an unpublished disposition, the Commonwealth Court agreed with the Board, sustained the demurrer, and dismissed the petition. *See Hudson v. PBPP*, No. 444 M.D. 2017, Order, at 1 (Pa. Cmwlth. May 29, 2018).[1]

Presently, Appellant renews his assertion that he should be presumed to have a minimum sentence of one day and, as such, that he should immediately be reviewed for

---

[1] The Court did not address Appellant's contention that *Castle* should be overruled.

parole.[2] He also repeats his contention that *Castle* was wrongly decided, and asks this Court to overturn it. In particular, Appellant observes that Section 9756 of the Sentencing Code, *see* 42 Pa.C.S. §9756 (relating to sentences of total confinement), requires that a defendant be given the right to parole after a minimum sentence of no more than half the maximum sentence. He notes that the provision enumerates three exceptions – namely, maximum sentences of less than thirty days, sentences for summary offenses, and sentences for nonpayment of fines or costs – and that these exceptions do not include sentences of life imprisonment. *See id.* §9756(c).

Further, Appellant points out that an individual who commits second-degree murder by means of arson is required to be sentenced to "life imprisonment *without right to parole*," 18 Pa.C.S. §3301(b)(1) (emphasis added), and an offender convicted of a third crime of violence may, under some circumstances, be sentenced to "life imprisonment *without parole*." 42 Pa.C.S. §9714(a)(2) (emphasis added). Appellant maintains that, by highlighting the unavailability of parole in these circumstances, the language of such provisions differs from that of the statute under which he was sentenced, which only states that a second-degree murderer "shall be sentenced to a term of life imprisonment." 18 Pa.C.S. §1102(b). Appellant concludes from this that the General Assembly intended that life sentences for second-degree murder carry the possibility of parole after some portion of the sentence has been served.[3]

---

[2] Appellant has acted *pro se* throughout this litigation.

[3] Appellant forwards a similar comparison-based argument with regard to life sentences imposed for first-degree murder. However, the statutory life-sentence language for first-degree murder is substantively identical to that for second-degree murder.

Separately, Appellant maintains that Article I, Section 14 of the Pennsylvania Constitution mandates that all life sentences are maximum, not minimum, ones. That provision states in full:
(continued…)

A demurrer will only be sustained where, on the facts alleged, the law says with certainty that relief is unavailable. *See Bundy v. Wetzel*, ___ Pa. ___, ___, 184 A.3d 551, 556 (2018). In considering a demurrer, reviewing courts accept all well-pleaded material averments and all inferences fairly deducible from them, but they need not accept any of the complaint's conclusions of law or argumentative allegations. *See Small v. Horn*, 554 Pa. 600, 608, 722 A.2d 664, 668 (1998). The issues forwarded by appellant raise questions of statutory interpretation as to which our review is *de novo* and plenary. *See Commonwealth v. Cullen-Doyle*, 640 Pa. 783, 786, 164 A.3d 1239, 1241 (2017).

Release on parole is "a matter of grace and mercy shown to a prisoner who has demonstrated to the Parole Board's satisfaction his future ability to function as a law-abiding member of society upon release before the expiration of the prisoner's maximum sentence." *Rogers v. PBPP*, 555 Pa. 285, 292, 724 A.2d 319, 322-23 (1999). Parole is not a right, but "a penological measure for the disciplinary treatment of prisoners who seem capable of rehabilitation outside of prison walls." *Commonwealth*

---

(…continued)

> All prisoners shall be bailable by sufficient sureties, unless for capital offenses or for offenses for which the maximum sentence is life imprisonment or unless no condition or combination of conditions other than imprisonment will reasonably assure the safety of any person and the community when the proof is evident or presumption great; and the privilege of the writ of habeas corpus shall not be suspended, unless when in case of rebellion or invasion the public safety may require it.

PA. CONST. art. I, §14. This provision pertains to the right to bail as balanced against the need for public safety, and indicates that the normal bail rules do not apply to defendants accused of capital crimes or "offenses for which the maximum sentence is life imprisonment." Contrary to Appellant's assertion, it does not purport to address whether all life sentences in Pennsylvania are, or are presumed to be, maximum sentences for which a minimum sentence of less than life applies.

*v. Brittingham*, 442 Pa. 241, 246, 275 A.2d 83, 85 (1971) (internal quotation marks omitted). Further, "[t]he prisoner on parole is still in the legal custody of the state through the warden of the institution from which he was paroled, and is under the control of the warden and of other agents of the Commonwealth until expiration of the term of his sentence." *Id.* (internal quotation marks and citations omitted). Hence, the actual sentence of a prisoner subject to total confinement is his maximum sentence, and his minimum sentence merely sets the time after which he is eligible to serve the remainder of his sentence on parole. *Accord Commonwealth ex rel. Jones v. Rundle*, 413 Pa. 456, 457, 199 A.2d 135, 138 (1964); *Gundy v. PBPP*, 82 Pa. Cmwlth. 618, 623, 478 A.2d 139, 141 (1984). *See generally Martin v. PBPP*, 576 Pa. 588, 595-96, 840 A.2d 299, 303 (2003) (explaining that, following a parole violation, the Board can require the defendant to serve the remainder of his sentence as "backtime" before any sentence for a different offense begins).

Sentencing courts are required to select from a list of options, including total confinement. *See* 42 Pa.C.S. §9721(a). When total confinement is imposed, the court must, as a general rule, state a minimum sentence of confinement no greater than one-half of the maximum sentence. *See id.* §9756(b)(1). When a defendant is convicted of second-degree murder, the court is required to impose total confinement for life. *See* 18 Pa.C.S. §1102(b) (stating that, with exceptions not presently relevant, a person convicted of second-degree murder "shall be sentenced to a term of life imprisonment"). Appellant does not dispute this, but contends that a life sentence for second-degree murder is a maximum sentence that should be imposed together with a minimum sentence. Since no minimum sentence for second-degree murder was stated in his sentencing order, Appellant suggests that, under *Ulbrick*, a minimum sentence of one day should be presumed and retroactively applied to him.

*Ulbrick* is distinguishable from the present controversy. In that matter, the sentencing court had issued a flat sentence of twenty years without specifying a minimum sentence. A maximum sentence along these lines lends itself to the general directive that a minimum sentence of confinement be specified which does not exceed one-half of the maximum sentence. A life sentence is qualitatively different in that it expires when the prisoner dies, not after a specified number of years.

With that said, the question remains whether parole eligibility after a certain amount of time can otherwise attach to a life sentence for second-degree murder. In advocating for this outcome, Appellant notes that some statutes which require imposition of a life sentence clarify that parole is unavailable, whereas the provision under which he was sentenced does not. His argument relies on the concept that, where the General Assembly includes specific language in one section of a statute but excludes it from another section, "the language should not be implied where excluded," and hence, "the omission of such a provision from a similar section is significant to show a different legislative intent." *In re Vencil*, 638 Pa. 1, 16, 152 A.3d 235, 244 (2017) (quoting *Fletcher v. Pa. Prop. & Cas. Ins. Guar. Ass'n*, 603 Pa. 452, 462, 985 A.2d 678, 684 (2009)).

While that is true as a general matter, it does not pertain in all situations. In *Commonwealth v. Smith*, ___ Pa. ___, 186 A.3d 397 (2018), for example, the Court found the precept inapplicable where an alternate explanation for the textual difference was evident. *See id.* at ___, 186 A.3d at 402-03. There, the deadly-weapon-possessed sentencing enhancement contained an intent qualifier so that it could only be imposed for possession of a non-weapon instrumentality where the offender intended to use the item as a weapon. *See id.* at ___ n.4, 186 A.3d at 401 n.4. Although the similarly-worded deadly-weapon-used enhancement lacked a similar qualifier, the Court did not

ascribe significance to its absence because the latter enhancement was already focused, inherently, on how the item was used during the offense. *See id.* at ___, 186 A.3d at 403. The guiding principle which brought this distinction into focus was that statutory words should be interpreted within the context in which they appear. *See id.* at ___, 186 A.3d at 402 (citing *Rendell v. Pa. State Ethics Comm'n*, 603 Pa. 292, 303–04, 983 A.2d 708, 715 (2009)).

In the present matter as well, the difference in statutory language highlighted by Appellant is not dispositive. Whereas context was a crucial factor in *Smith*, here we find salience in the Statutory Construction Act's directive that courts should presume the General Assembly does not intend results that are "absurd, impossible of execution, or unreasonable." 1 Pa.C.S. §1922(1). Under Appellant's theory, in the case of second-degree murder sentencing courts should impose a minimum sentence no greater than one-half of the mandated life sentence. This, however, would be "impossible of execution" because a sentencing court cannot know, at the time of sentencing, the number of years the defendant will continue to live. Thus, the court cannot ascertain a minimum term of years as required by paragraph (b)(1).

To the extent Appellant means to suggest that sentencing courts should always impose a minimum sentence of one day when sentencing a defendant to life imprisonment, such result would be unreasonable because life sentences are reserved for the most serious crimes, and the Legislature is otherwise able to specify a minimum parole date in connection with life sentences if that is its intent. *See, e.g.*, 18 Pa.C.S. §1102.1(a)(1) (referring to a sentence of imprisonment "which shall be at least 35 years to life"). Indeed, the fact that in some statutes, such as the one just cited, the Legislature has expressly indicated a minimum sentence of a term of years in conjunction with a maximum term of life imprisonment, suggests that the principle on

which Appellant relies – again, that differences in statutory language ordinarily reflect differences in legislative intent – undermines his position in an equal measure as it supports it. In this latter regard, whereas second-degree murder carries a penalty which "shall be" life imprisonment, 42 Pa.C.S. §1102(b), other crimes implicate a "maximum term" of life imprisonment. *See, e.g.*, 42 Pa.C.S. §9720.2 (providing that the sentence for human trafficking or human servitude "shall be . . . up to a *maximum term* of life imprisonment" (emphasis added)); 18 Pa.C.S. §3121(e)(2) (same with regard to rape of a child under thirteen years old resulting in serious bodily injury); *id.* §3123(d)(2) (same with regard to involuntary deviate sexual intercourse with a child under thirteen years old resulting in serious bodily injury); *cf. Castle*, 123 Pa. Cmwlth. at 575-76, 554 A.2d at 628 (concluding that, because Section 1102(b) indicates a life sentence "shall" be imposed for second-degree murder, courts may not impose a lesser term).

In light of the foregoing, we hold that the Legislature did not intend for Section 9756(b)'s minimum-sentence provision to apply to mandatory life sentences for second-degree murder.

The question becomes, then, whether there is any other basis on which to conclude that a minimum parole date can or should attach to such a sentence. In this regard, Appellant emphasizes that Section 9756(c) contains a list of categories of sentences for which parole is prohibited, and the list does not include life sentences for second-degree murder. At the time of Appellant's sentencing, the statute provided:

> **(c) Prohibition of parole.**—Except in the case of murder of the first degree, the court may impose a sentence to imprisonment without the right to parole only when:
>
> (1) a summary offense is charged;

> (2) sentence is imposed for nonpayment of fines or costs, or
> both, in which case the sentence shall specify the number of
> days to be served; and
>
> (3) the maximum term or terms of imprisonment imposed on
> one or more indictments to run consecutively or concurrently
> total less than 30 days.

42 Pa.C.S. §9756(c) (1974). Since these were stated to be the "only" times when parole was precluded, Appellant contends that his life sentence should be viewed as a maximum in relation to which a minimum sentence of confinement should have been imposed. *See, e.g.*, Reply Brief for Appellant at 4.

This language is admittedly somewhat confounding, as it does seem to imply that, in every other instance besides the four categories mentioned, *i.e.*, first-degree murder plus the three enumerated categories, a sentencing court may not impose a sentence which omits a parole-eligibility date. At the same time, however, and as developed above, the sole statutory directive for courts in imposing a minimum term of total confinement does not apply to mandatory life sentences. Consequently, courts sentencing defendants to a mandatory term of life imprisonment were, at the time Appellant was sentenced, unable to specify a parole-availability date in accordance with law, and unable to omit one in accordance with law.[4]

Facing this challenge, the Commonwealth Court in *Castle* reasoned that Section 9765 of the Sentencing Code

> does not have as its stated purpose the creation of eligibility for parole nor
> does it refer to the power of the Board to parole, but states only what a
> trial court may or may not do when imposing a sentence in certain
> instances. Section 21, 61 P.S. § 331.21 [repealed and replaced by

---

[4] The provision as quoted above was in effect at the time Appellant was sentenced in 1979. *See generally Castle*, 123 Pa. Cmwlth. at 574 n.3, 554 A.2d at 627 n.3 (summarizing its history). The prefatory text has since been amended. *See* Act of June 22, 2000, P.L. 345, No. 41, §4.

> Section 6137], specifically prohibits the Board from paroling a prisoner condemned to death or life imprisonment. In addition, section 21 prohibits the Board from paroling any prisoner before the expiration of the minimum term of a sentence. . . . We hold that section 9756(c) does not affirmatively create a right to apply for parole enforceable before the Board in this case.

*Castle*, 123 Pa. Cmwlth. at 577, 554 A.2d 628-29; *accord Commonwealth v. Lewis*, 718 A.2d 1262, 1265 (Pa. Super. 1998); *cf. Commonwealth v. Yount*, 419 Pa. Super. 613, 623, 615 A.2d 1316, 1320-21 (1992) (applying similar reasoning with regard to a life sentence imposed for first-degree murder).

We agree with the fundamental premise of the above passage to the extent it articulates that Section 9765 was never intended specifically to create a personal right to be reviewed for parole. Rather, it was meant to direct common pleas courts in discharging their sentencing obligations. The common pleas court which sentenced Appellant evidently settled on the concept that, in view of the mandatory nature of the life sentence associated with his offense, it was required to sentence Appellant to life without parole. Since Appellant lacks any legal right to parole eligibility, there is no warrant for a reviewing court to alter his sentence.

Relatedly, it is important to recognize that the Board is an administrative agency of the Commonwealth. *See Bronson v. PBPP*, 491 Pa. 549, 556, 421 A.2d 1021, 1024 (1980). Thus, it "can only exercise those powers which have been conferred upon it by the Legislature in clear and unmistakable language." *Aetna Cas. & Sur. Co. v. Ins. Dep't*, 536 Pa. 105, 118, 638 A.2d 194, 200 (1994) (quoting *Human Relations Comm'n v. Transit Cas. Ins. Co.*, 478 Pa. 430, 438, 387 A.2d 58, 62 (1978)). *See Young v. PBPP*, 189 A.3d 16, 22 (Pa. Cmwlth. 2018) (explaining the Board "is not a free agent; rather, it operates within the confines of its statutory authorization and mandate"). There is no statutory authorization for the Board to grant parole to an individual sentenced to a mandatory life term. *See Commonwealth v. Brenizer*, 477 Pa. 534, 539-

40, 384 A.2d 1218, 1221 (1978).  Indeed, to the contrary, the Board may "release on parole any inmate to whom the power to parole is granted to the board by this chapter, *except an inmate* condemned to death or *serving life imprisonment*."  61 Pa.C.S. §6137(a)(1) (emphasis added).

We therefore conclude that the Board lacks the power to release on parole an inmate servicing a mandatory life sentence for second-degree murder.[5]  That being the case, the Commonwealth Court correctly sustained the Board's demurrer and dismissed the petition for review.

Accordingly, the order of the Commonwealth Court is affirmed.

Justices Baer, Todd, Dougherty and Mundy join the opinion.

Justice Wecht files a concurring opinion in which Justice Donohue joins.

---

[5] To the extent Appellant presently seeks to raise claims based on due process and equal protection, *see* Brief for Appellant at 22, those claims are waived as they were not raised before the Commonwealth Court.  *See* Pa.R.A.P. 302(a).