J-S52019-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ABDULLAH R R. MUHAMMAD | : | |
| | : | |
| Appellant | : | No. 2250 EDA 2018 |

Appeal from the PCRA Order Entered July 13, 2018,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0005853-2012.

BEFORE:  OTT, J., KUNSELMAN, J., and MCLAUGHLIN, J.

MEMORANDUM BY KUNSELMAN, J.:　　　　　**FILED DECEMBER 19, 2019**

Abdullah R R. Muhammed[1] appeals *pro se* from the order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA").  We affirm.

This Court previously summarized the relevant factual history as follows:

> In 2009, [Muhammed] became romantically involved with [his] co-defendant, Tania Boozer ("Boozer").  On three different occasions that year, Boozer arranged for her sister to purchase firearms on behalf of [Muhammed].  Boozer also purchased a life insurance policy that covered accidental death for her husband, James Hayward ("Victim").  On the morning of July 14, 2009, Victim was shot to death while walking on a Philadelphia street.

---

[1] We note that throughout the certified record before us various documents refer to Appellant as: "Abdullah R R. Muhammad," ""Abdullah R. R Muhammad," "Abdullah R. R. Muhammad," "Abdullah R. Muhammad," and "Abdullah Muhammad."

> The deadly gunshots were seen coming from a vehicle matching the description of [Muhammed's] car. Eleven days later, [Muhammed] reported his vehicle as having been stolen.

*Commonwealth v. Muhammed*, 133 A.3d 68 (Pa. Super. 2015) (unpublished memorandum at 1).[2]

Muhammed was arrested and charged with multiple crimes related to the above incident. On March 24, 2014, a jury convicted him of murder in the first degree, criminal conspiracy, possession of instrument of crime and related weapons offenses. Muhammad was sentenced to life imprisonment without the possibility of parole on the murder charge. This Court affirmed his judgment of sentence, and our Supreme Court denied allowance of appeal. *See Muhammed*, 133 A.3d 68 (unpublished memorandum); *appeal denied*, 135 A.3d 585 (Pa. 2016).

On May 23, 2016, Muhammed filed a *pro se* PCRA petition. The court appointed Muhammed PCRA counsel, who filed a *Turner*/*Finley*[3] "no merit" letter and a motion to withdraw from representation.[4] The PCRA court issued

_____

[2] For a more detailed presentation of the factual and procedural history of this matter, see the opinion authored by the trial court. *See* Trial Court Opinion, 12/23/14, at 1-11.

[3] *See Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[4] The court appointed Stephen O'Hanlon, Esq., as initial PCRA counsel; however, it appears that Muhammed requested replacement homicide counsel. Thus, Attorney O'Hanlon was permitted to withdraw from representation, and James Lammendola, Esq. was appointed as replacement

a Pa.R.Crim.P. 907 notice of its intent to dismiss the petition without a hearing, and Muhammed filed a *pro se* response to the notice. On July 13, 2018, the PCRA court dismissed the petition, and granted counsel's motion to withdraw. Muhammed filed a timely *pro se* notice of appeal. Both Muhammed and the PCRA court complied with Pa.R.A.P. 1925.

Muhammed raises the following issues for our review.

1. Did trial counsel render constitutionally ineffective assistance where he failed to conduct a proper investigation into [Muhammed's] case which would have produced evidence of a possible "alibi" defense, and where counsel failed or simply refused to subject the prosecutions [sic] case to any "adversarial testing[?]"

2. Was [replacement] PCRA counsel ineffective when he failed to amend and perfect [Muhammed's] claims of trial counsel's ineffectiveness where said claims have arguable merits[?]

3. Did the PCRA court err as a matter of law when it dismissed [Muhammed's] first PCRA petition based on the grounds that [replacement] PCRA counsel determined the issues raised by [Muhammed] lacked merits[?]

4. Did the [PCRA] court abuse its discretion when it informed [Muhammed] it would hold him in contempt of court if he asked again what if any statute it was using to impose the life without parole sentence, and where the court has yet to answer said question[?]

Muhammed's Brief at 4 (issues reordered for ease of disposition, unnecessary capitalization omitted).

---

PCRA counsel. Following his appointment, Attorney Lammendola filed a "no merit" letter and a motion to withdraw from representation.

- 3 -

When addressing a challenge to the dismissal of a PCRA petition, our standard of review is as follows:

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

Additionally, when a petitioner alleges trial counsel's ineffectiveness in a PCRA petition, he must prove by a preponderance of the evidence that his conviction or sentence resulted from ineffective assistance of counsel "which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). The petitioner must demonstrate:

> (1) that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered prejudice as a result of counsel's error. To prove that counsel's chosen strategy lacked a reasonable basis, a petitioner must prove that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. Regarding the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different

but for counsel's action or inaction. Counsel is presumed to be effective; accordingly, to succeed on a claim of ineffectiveness[,] the petitioner must advance sufficient evidence to overcome this presumption.

*Commonwealth v. Johnson*, 139 A.3d 1257, 1272 (Pa. 2016) (internal citations and quotation marks omitted). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010).

Furthermore, "[c]laims of ineffective assistance of counsel are not self-proving." *Commonwealth v. Wharton*, 811 A.2d 978, 986 (Pa. 2002). In order to be entitled to relief, "a petitioner must set forth and individually discuss substantively each prong of the [ineffectiveness] test." *Commonwealth v. Steele*, 961 A.2d 786, 797 (Pa. 2008). When the appellant is advancing an ineffectiveness claim, and fails to meaningfully discuss all three prongs of the ineffectiveness test, he is not entitled to relief, and we are constrained to find such claims waived for lack of development. *Id*.

In his first issue, Muhammed claims that his trial counsel was ineffective for failing to investigate potential witnesses for an alibi defense. Muhammed contends that he provided his counsel with information that "could have possibly enabled him to present" such a defense. Muhammed's Brief at 10. Muhammed argues that trial counsel's failure to conduct any investigation into his claim of a possible alibi defense constitutes *per se* ineffectiveness. *Id*. at 11-12.

As the trial court acknowledged in its Rule 1925(a) opinion, in order to obtain relief on a claim that counsel failed to investigate the existence of witnesses, an appellant must show the court that (1) the witnesses existed; (2) the witnesses were available and prepared to cooperate and testify on the appellant's behalf; (3) counsel was informed of the existence of the witnesses or should have known of their existence; and (4) the absence of the testimony prejudiced the appellant. **See Commonwealth v. Lawson**, 762 A.2d 753, 756 (Pa. Super. 2000).

Here, Muhammed, has not identified the nature of his purported alibi defense, or what information he allegedly provided to trial counsel. Indeed, there is nothing in the record indicating that trial counsel knew of this alleged alibi prior to or during trial. More importantly, Muhammed has not identified by name any of the potential alibi witnesses that trial counsel failed to interview, or provided affidavits from the alleged witnesses indicating that they were available and willing to testify on his behalf. Thus, Muhammed has not developed his ineffectiveness claim by demonstrating that his alibi claim had arguable merit, that trial counsel had no reasonable basis for not pursing it, or that he was prejudiced by counsel's actions. **See Steele**, 961 A.2d at 797.

Finally, Muhammed fails to acknowledge that, during a colloquy with the trial court, he confirmed that his counsel had called several witnesses on his behalf, and answered "no" when asked by the court if there were any other

witnesses that he wished to call. N.T. Trial, 3/21/14, at 53. "A defendant who voluntarily waives the right to call witnesses during a colloquy cannot later claim ineffective assistance[.]" **Lawson**, 762 A.2d at 756. Thus, Muhammed's first issue, even if not waived for lack of development, would garner no relief.[5]

In his second issue, Muhammed raises a claim of replacement PCRA counsel's alleged ineffectiveness for filing a "no merit" letter and moving to withdraw from representation without filing an amended PCRA petition seeking relief based on trial counsel's alleged ineffectiveness. According to Muhammed, "PCRA counsel [sic] review of the record consisted only of contacting prior counsel this [sic] falls short of a proper and independent review of the record." Muhammed's Brief at 15.

Here, Muhammed's claim that PCRA counsel was ineffective rests entirely on his previously discussed claim that that trial counsel was ineffective for failing to investigate alibi witnesses. However, since Muhammed cannot establish that trial counsel was ineffective, his claim that replacement PCRA counsel was ineffective for failing to file an amended petition advocating such ineffectiveness must also fail. **See Commonwealth v. Spotz**, 47 A.3d 63,

---

[5] In his statement of questions presented, Muhammed framed his first issue as additionally encompassing trial counsel's purported failure to "subject the prosecutions [sic] case to any 'adversarial testing.'" Muhammed's Brief at 4. However, Muhammed's brief includes no discussion of this particular issue. Therefore, it is waived.

122 (PA. 2012) (holding that, where the underlying claim is meritless, the derivative claim of ineffective assistance of counsel for failing to object has no arguable merit). Moreover, replacement PCRA counsel spoke with prior PCRA counsel, who related that he hired an investigator that was unable to find any witnesses or evidence supporting Muhammed's purported alibi defense. **See** PCRA Court Opinion, 10/5/18, at 10; "No Merit" Letter, 6/2/18, at 15. Accordingly, Muhammed's second issue entitles him to no relief.

Muhammed next argues that the PCRA court erred in dismissing his petition "when it accepted counsel's 'no merit' letter when PCRA counsel failed to investigate the issues presented in [Muhammed's] *pro se* petition." Muhammend's Brief at 16. Muhammed claims that the PCRA court "knew or should have known that PCRA counsel had an obligation to review potential claims independent of trial counsel's representation as to the merits." **Id**. According to Muhammed, "PCRA counsel relied solely on trial counsel's representation, PCRA counsel did not claim to have obtained either written or oral confirmation from [Muhammed] or address [his] allegations to the contrary." **Id**.[6]

_____

[6] Muhammed also suggests that the PCRA court erred in dismissing his petition without conducting an evidentiary hearing. **See** Muhammed's Brief at 16. However, this issue was not raised in either Muhammed's concise statement or in his statement of questions presented. Thus, he failed to preserve it for our review. **See Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) (holding that if an appellant is directed to file a concise statement of matters to be raised on appeal pursuant to Pa.R.A.P. 1925(b), any issues not raised in

As noted previously, we review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level based on the findings of the PCRA court and the evidence of record. *Ford*, 44 A.3d at 1194. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. *Id*. Further, we grant great deference to the factual findings of the PCRA court, and will not disturb those findings unless they have no support in the record. *Id*.

Here, Muhammed has failed to identify any particular finding by the PCRA court that is not supported by the record. Nor has he identified any issues presented in his *pro se* petition that PCRA counsel purportedly failed to investigate. Thus, his third issue is waived for lack of development. *See Commonwealth v. Heggins*, 809 A.2d 908, 912 n.2 (Pa. Super. 2002) (holding that an issue identified on appeal but not developed in appellant's brief of abandoned and therefore waived).[7]

---

that statement are waived); *see also* Pa.R.A.P. 302(a); Pa.R.A.P 2116(a) (providing that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). Moreover, even if the issue had been preserved, our above discussion demonstrates no need for an evidentiary hearing.

[7] Had we not deemed Muhammed's third issue waived, we would have concluded that it warrants no relief, as the PCRA court conducted its own independent review of the record, determined that the thirty-seven-paged *Turner*/*Finley* letter was well-founded, and that Muhammed's issues lacked merit. *See* PCRA Court Opinion, 10/5/18, at 11.

Turning to Muhammed's fourth issue, we note that he framed it in his statement of questions presented, as follows: "Did the [PCRA] court abuse its discretion when it informed [Muhammed] it would hold him in contempt of court if he asked again what if any statute it was using to impose the life without parole sentence, and where the court has yet to answer said question[?]" Muhammed's Brief at 4. However, in his brief, Muhammed concedes that the issue, as framed, lacks merit. *Id*. at 17.

Nevertheless, Muhammed argues that the wording of his fourth issue salvaged a claim that his life without parole sentence is illegal due to the lack of a minimum term of years. Muhammed's Brief at 18-19 (citing 41 Pa.C.S.A. § 9756(b)(1) (providing that "[t]he court shall impose a minimum sentence of confinement which shall not exceed one-half of the maximum sentence imposed")). Muhammed argues that, pursuant to § 9756(b)(1), he is entitled to a minimum sentence and is eligible for parole. Muhammed's Brief at 20-21.

This particular argument was not raised before the PCRA court. While issues first raised on appeal are typically waived, a challenge to the legality of sentence may be raised at any time. *See Commonwealth v. Berry*, 877 A.2d 479, 482 (Pa. Super. 2005) (holding that a challenge to the legality of a sentence is never waived so long as a court has jurisdiction to address the claim). Thus, we may address Muhammed's challenge to the legality of his sentence.

Here, Muhammed was convicted of first-degree-murder. Accordingly, he was sentenced to a mandatory term of life in prison. **See** 18 Pa.C.S.A. § 1102(a)(1) (providing that "a person who has been convicted of a murder of the first degree . . . shall be sentenced to death or to a term of life imprisonment"). As our Supreme Court has explained, "the sole statutory directive for courts in imposing a minimum term of total confinement does not apply to mandatory life sentences." **Hudson v. Pa. Bd. of Prob. & Parole**, 204 A.3d 392, 398 (Pa. 2019); **see also** 42 Pa.C.S.A. § 9756(c) (providing that the court may impose a sentence of imprisonment without the right to parole "[e]xcept in the case of murder of the first degree"). Consequently, there is no statutory authorization to grant parole to an individual sentenced to a mandatory life term. **Hudson**, 204 A.3d at 399; **see also** 61 Pa.C.S.A. §6137(a)(1) (providing that the parole board may "release on parole any inmate to whom the power to parole is granted to the board by this chapter, except an inmate . . . serving life imprisonment."). Thus, Muhammed's legality of sentence claim lacks merit.

Order affirmed.

Judge McLaughlin joins this memorandum.

Judge Ott concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/19/19